**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DIVISION OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MONICA VOSS,** | )( | |
| *Plaintiff,* | )( | **Civil Action No.: 4:17-cv-1408** |
| **V.** | )( | **(JURY TRIAL)** |
| **FORT BEND COUNTY, TEXAS; and** | )( | **ORIGINAL COMPLAINT** |
| **GREGORY G. GOODE,** *Individually,* | | |
| | )( | |
| *Defendants.* | | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**NOW COMES** Plaintiff MONICA VOSS complaining of FORT BEND COUNTY, TEXAS and GREGORY G. GOODE and will show the Court the following:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over Plaintiff's federal claims, under 28 U.S.C. § 1331, 42 U.S.C. §§ 1983 and 1988, and supplemental jurisdiction, under 28 U.S.C. § 1367(a), to hear Plaintiff's state law claims, if any.

2.      Venue is proper in this Court, under 28 U.S.C. § 1391(b), because the incident at issue took place in Fort Bend County, Texas, within the United States Southern District of Texas.

**PARTIES**

3.      Plaintiff Monica Voss is a resident of Fort Bend County, Texas.

4.      Defendant Fort Bend County, Texas is a governmental unit existing within the U.S. Southern District of Texas and can be served with process by serving Robert Hebert, County Judge of Fort Bend County, Texas at 401 Jackson Street, Richmond, Texas 77469.

5.      Defendant Gregory G. Goode is an individual and resident of Fort Bend County, Texas and can be served with process at 1410 Williams Way Boulevard, Richmond, Texas 77469 or wherever he is found.

## FACTS

6.      Plaintiff Monica Voss ("Detective Voss") is 56 years, married with children and lives in Fort Bend County. Detective Voss was a Harris County Sheriff's deputy from 1984 until her retirement in 2008 as a sergeant. While a deputy she was promoted to detective and worked in the child abuse unit for about 9 years. Detective Voss has never been disciplined as a law enforcement officer. Detective Voss lives in a house in Fort Bend County with her husband Mark Voss, a minor daughter E.V., and three other disabled children. Detective Voss also takes care of her elderly mother at her home.

7.      Defendant Gregory G. Goode ("Deputy Goode") currently works as a deputy with the Fort Bend County Sheriff's Office (FBCSO).

8.      December 2014 Defendant Gregory G. Goode took a boat and motor in Chambers County, Texas from the owner Rick Powell's home while dressed in a Fort Bend County Sheriff's Office (FBCSO) uniform and armed with his duty weapon. Deputy Goode brought with him FBCSO deputy Marcelo Garcia in a Fort Bend County Sheriff's uniform and duty weapon. Chambers County Sheriff's deputies stopped the alleged theft and the boat and motor were returned to their rightful owner. Defendant Goode received a 3-day suspension from the Fort Bend County Sheriff's Office and Deputy Garcia was reprimanded. Sheriff Troy E. Nehls allowed Defendant Goode to keep his job. See **Exhibit 1,** Channel 2 News article. While a

Chambers County Grand Jury no-billed Defendant Goode they never called Rick Powell, who was also the eyewitness, to testify about the theft to the Grand Jury.

9.      January 9, 1998 Deputy Goode plead guilty to DWI in Harris County Criminal Court at Law No.:2 and was sentenced to 1 year probation and fined $300. See **Exhibit 2,** judgment.

10.      Deputy Goode was charged in 1998 with felony burglary of a habitation in Harris County District Court 232. See **Exhibit 3,** district clerk record. The case was dismissed.

11.      Detective Voss adopted E.V. from Russia when she was one year old. Prior to being adopted E.V. was a "crib baby" and had been severely malnourished and mistreated and lacked medical care. E.V. has been diagnosed with possible fetal alcohol syndrome. Since Detective Voss adopted E.V. she has cared for and treated her as any mother would any child and loves her very much. School professionals and other mental health care providers have also diagnosed E.V. with several other severe mental health disorders such as Attention Deficit Hyperactivity Disorder, Oppositional Defiance Disorder, Reactive Attachment Disorder, Dysautonomia, and is possibly bipolar. E.V. takes medication prescribed by a psychiatrist for behavior.

12.      June 19, 2016, around midnight, Detective Voss was sitting at her computer in the front part of her house. The rest of her family including E.V. were in their rooms for the night. Detective Voss heard someone knock on the front door and say "Sheriff's department" very loud. Detective Voss could see it was a uniformed person through the glass of the door. Detective Voss, frightened by this late-night law enforcement visit immediately answered the door not knowing what was happening. When Detective Voss opened the door there were two Fort Bend County Sheriff's deputies there.

PLAINTIFF'S ORIGINAL COMPLAINT                                                                    Page 3

13.     One of the deputies present asked if she was Monica and Detective Voss said yes. Detective Voss' driver license record, easily accessible by their squad car computer, had the correct address on it. Identifying the person you are talking to is basic law enforcement training. FBCSO deputies had been to Detective Voss' residence on unrelated matters on several occasions. Deputy Goode told Detective Voss he was there at the request of Texas Child Protective Services to do a welfare check on E.V. who was allegedly threatening to commit suicide from her bedroom. Neither Detective Voss nor anyone in the Voss household has ever abused K.V. in any way.

14.     Detective Voss was quite shocked as the family had just returned from a great family weekend trip out of state. Detective Voss immediately called E.V. from her room. E.V. came to the front foyer where the deputies and Detective Voss were. Deputy Goode asked E.V. if she was depressed and if she was going to harm herself and E.V. plainly denied these actions to Deputy Goode. E.V. was laughing about it and appeared shocked by Deputy Goode's questions.

15.     Deputy Goode then asked Detective Voss in front of E.V. if she was Detective Voss' child by adoption or natural. This, of course, was very poor judgment to ask such a question in front of a child as parents sometime save such information for a later age when children may take it much better. However, despite such poor judgment by Deputy Goode Detective Voss complied again and answered Deputy Goode without comment.

16.     Detective Voss woke husband Mark to come out and told Mark briefly what was happening. Deputy Goode told Mark why he was there and they made small talk about law enforcement. Mark, seeing it appeared everything was fine, went back to bed as he had to get up very early for work the next day.

17.     Detective Voss then suggested to Deputy Goode he could interview E.V. out of her presence if he wanted to.

18.     After 20 or 30 minutes Detective Voss went outside to see what was taking so long. Detective Voss then told Deputy Goode that if E.V. was depressed or needed mental help she would certainly provide for that. Previously, E.V.'s psychiatrist had suggested Methodist Hospital or St. Luke Hospital if a problem ever arose. Detective Voss knew she could be on her way downtown while waiting on the emergency call back from E.V.'s psychiatrist.

19.     Detective Voss told E.V. to get into her car for the trip to the hospital. Deputy Goode then said K.V. could not and that he would not allow E.V. to go with Detective Voss. Deputy Goode then asked Detective Voss if he could take E.V. from her home to a "friend's" house for the night. Detective Voss said no as whatever "friend" Deputy Goode was talking about was most likely not a mental health care professional who would treat E.V.

20.     Being at an impasse after Deputy Goode had taken E.V. into custody Detective Voss went back inside her house for a few minutes to sort the confusing situation out. Based upon Detective Voss' many years of service in the Harris County Sheriff's Office child abuse unit and CPS she knew that E.V. may end up in a temporary foster home even without any valid reason.

21.     Detective Voss then returned outside and asked Deputy Goode if he had custody of K.V. and Deputy Goode stated he did. E.V. was in the backseat of the FBCSO's patrol car and Detective Voss was not allowed to talk to E.V. Deputy Goode then asked Detective Voss for her physical identification and she said it was in the house. Although Detective Voss was not under arrest or detention at that time Detective Voss stated that she wanted an attorney present for any further questioning.

22.    Deputy Goode then arrested Detective Voss for failure to identify to a police officer. Detective Voss knew this was a false arrest as she had not committed the offense of failure to ID. Deputy Goode handcuffed Detective Voss and put her in the back of the patrol car. After 15 to 20 minutes had elapsed Detective Voss began to get sick due to the stress of E.V.'s predicament and the deputies unjustified actions. Detective Voss knocked on the squad car window with her head as she did not want to vomit in the squad car. A deputy opened the squad car door and let her sit on the ground.

23.    As Detective Voss had recent nerve surgery on her elbow the behind the back handcuffing was hurting very bad and the cuffs were changed to the front. She then called her husband on her cell phone to tell him what was happening so he would not worry.

24.    Detective Voss also called a friend and told him what was happening to which the friend suggested calling Deputy Goode's captain Holtz. Deputy Goode was standing right over Detective Voss and told her Holz was his captain but he was not going to call him. Deputy Goode asked Detective Voss if she wanted him to jerk that phone out of her hand.

25.    Detective Voss told Deputy Goode she was trying to record what was happening. Deputy Goode replied not to worry as it was all being recorded. Detective Voss asked Deputy Goode to call his supervisor as she did not believe E.V. was being properly cared for and her arrest was unlawful. A few minutes later, while detective Voss was still sitting on the ground, another FBCSO patrol car came up. Deputy Goode went to this patrol car which was driven by FBCSO Sgt. Ellis. After Deputy Goode spoke with Sgt. Ellis for around 20 minutes Sgt. Ellis walked over and began to talk to Detective Voss. Sgt. Ellis said it appears everything was just a big misunderstanding that had gotten out of hand. After a few moments the deputies

took the handcuffs off. Sgt. Ellis stated they were calling a mental health person out to interview E.V. before they released her just to make sure E.V. was OK.

26.     A mental health care worker from Texana Crisis Center eventually arrived and interviewed E.V., as did Sgt. Ellis, and then E.V. was released.

27.     The events have caused Detective Voss at least past pain and suffering as well as past present and in all likelihood future anxiety, lost sleep, fear, embarrassment, anger, loss of enjoyment of life, and other mental anguish. It caused Detective Voss great humiliation to be handcuffed and arrested in front her E.V.

## CAUSES OF ACTION

### Violations of the Fourth and Fourteenth Amendments

28.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

29.     The Fourth Amendment guarantees everyone the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *U.S. Const. amend. IV.*  Fourth Amendment violation are actionable under 42 U.S.C. Section 1983.

30.     Defendant Gregory G. Goode violated Detective Voss' Fourth Amendment and Fourteenth Amendments rights, at least, when he detained and arrested her without probable cause or reasonable suspicion.

31.     The Fourteenth Amendment guarantees everyone the right not to be deprived of liberty without due process of law. *U.S. Const. amend. XIV.*

32.     Defendants violated Detective Voss' Fourteenth Amendment rights when they detained and arrested her without probable cause or reasonable suspicion.

## **Policy, Practice, Custom and Procedure**

33.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

34.     Deputy Goode should have been fired for his past abuse of authority and the boat incident combined with his past criminal history. Instead Fort Bend County policymaker Sheriff Troy E. Nehls and the internal affairs department were deliberately indifferent and kept Deputy Goode in his patrol position thereby causing Detective Voss to suffer unlawful detention and false arrest. Fort Bend County's training, retention of Deputy Goode and discipline was deliberately indifferent. Additionally, the FBCSO has a pattern and practice of arresting individuals for failure to identify and other crimes without probable cause or reasonable suspicion.

## **Punitive Damages**

35.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

36.     All individuals sued are liable for punitive damages as they were consciously indifferent to the plaintiff's constitutional rights and they did the acts knowingly, such acts being extreme and outrageous and shocking to the conscious.

## **Attorney's Fees**

37.     Plaintiff is entitled to recover attorneys' fees and costs to enforce her Constitutional rights and under 42 U.S.C. Sections 1983 and 1988, from Defendants.

## **Jury Trial**

38.     Plaintiff demands trial by jury on all issues triable to a jury.

**Prayer For Relief**

WHEREFORE, Plaintiff Voss requests that the Court:

A.      Enter judgment for Plaintiff against Fort Bend County, Texas and each and every individually name defendant;

B.      Find that Plaintiff is the prevailing parties in this case and award attorneys' fees and costs, pursuant to federal law, as noted against defendant Fort Bend County, Texas and the individually named defendant police officers;

C.      Award damages to Plaintiff for the violations of her Constitutional rights claim;

D.      Award Pre- and post-judgement interest;

E.      Award Punitive damages against all individually named defendants; and

F.      Grant such other and further relief as appears reasonable and just, to which, Plaintiff shows herself entitled.


RESPECTFULLY SUBMITTED
KALLINEN LAW PLLC

/S/ Randall L. Kallinen
Randall L. Kallinen
State Bar of Texas No. 00790995
U.S. Southern District of Texas Bar No.: 19417
511 Broadway Street
Houston, Texas 77012
Telephone:      713.320.3785
FAX:            713.893.6737
E-mail:AttorneyKallinen@aol.com
Attorney for Plaintiff