**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Monica Voss, | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | Civil Action No. 4:17-cv-1408 |
| | § | |
| | § | JURY TRIAL DEMANDED |
| | § | |
| Fort Bend County, Texas; and | § | |
| Gregory G. Goode, Individually, | § | |
| *Defendants* | § | |

**DEFENDANT GOODE'S *REPLY* TO PLAINTIFF'S**
***RESPONSE IN OPPOSITION* TO MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

FORT BEND COUNTY DEPUTY SHERIFF DEFENDANT GREGORY G. GOODE

("Deputy Goode"), files this *Reply* to *Plaintiff's Response in Opposition to Defendant Goode's*

*Motion for Summary Judgment* (Doc. 37), and in support thereof would  respectfully show the Court

the following:

**I.**
**BRIEF OVERVIEW**

1.1     *Plaintiff's Response in Opposition* has utterly failed to raise any fact issue sufficient to

overcome Deputy Goode's *Motion for Summary Judgment*.  Indeed, Plaintiff's *Response in*

*Opposition* is notable much more for what it <u>fails to proffer</u> than for what it actually submits.

To be specific:

• Plaintiff did not analyze the audio files and video files Defendant Goode proffered
in support of his *Motion for Summary Judgment*, and actually represented in her
*Response in Opposition* that <u>no video was attached to Defendant Goode's motion,</u>

1

insinuating that such video actually supports her version of events, and attaching it as if Deputy Goode forgot to do so! (Doc. 37, p. 1).

• Plaintiff did not attack or dispute any of the clear, positive and direct affidavit testimony proffered by Defendant Goode in support of his *Motion for Summary Judgment*, (as well as that of Deputies McGuigan and Ellis) other to make a blanket, global objection to any testimony emanating from "interested or paid witnesses," as if Plaintiff Voss herself falls outside of the category of "interested" witnesses. (Doc. 37, p. 2).

• Plaintiff did not attach <u>even one page</u> of the combined 247 pages of deposition testimony she elicited from Deputy Goode, Deputy McGuigan, and Deputy Ellis (See Doc. 34). Each of the three officers testified consistently with their affidavits and with the video and audio evidence. Had there been any errors or mistakes, Plaintiff would have and should have attached that evidence to try and create a fact issue.[1]

• Plaintiff did not attach or reference the recordings she made (whether by surveillance camera or otherwise) of the "whole interaction" which she claimed to be making at the scene, supposedly contradicting Deputy Goode's (immaterial) contention that she never gave him her last name prior to her arrest. He needed her date of birth as well. See Doc. 25-1, Affidavit of Goode at ¶ 14.[2]

• Plaintiff has proffered no expert testimony attempting to create a fact issue that <u>probable cause did not support her arrest</u>.[3]

---

[1]   All deposition transcripts were completed and tendered to counsel by Plaintiff's chosen court reporter on or before June 7, 2018. Not even one question or answer elicited during such testimony was attached, extracted, summarized, or even referenced in Plaintiff's *Response in Opposition*.

[2]   The Plaintiff specifically stated she had initially given Deputy Goode her last name before the arrival of Deputy McGuigan and that she had "recordings" of those initial interactions at her front door. She can be heard mentioning the existence of these recordings on Deputy Goode's dash camera DVD. Listen to Doc. 25-4, Exhibit "A" containing Deputy Goode's dash camera audio/video file System ID: 394593, at time mark reference 23:20:55 through 23:21:39, where she says (after being arrested) "I already told you who I was when you came to my door and I have it all TAPE-RECORDED!" These recordings have never been disclosed to counsel for Deputy Goode. Indeed, as noted in Exhibit 1 hereto, Deputy Goode's Attorney in Charge made an email request for a copy of these (apparently spoilated) recordings, and was tersely admonished "not to waste their time." (N.B. All attempted transcriptions contained in this *Reply* are the sole responsibility of counsel of record for Deputy Goode, attempted to be accurately transcribed in good faith, as are all characterizations as to tone and/or emphasis).

[3]   More than a year after filing suit, Plaintiff has apparently found it impossible to find an expert, even if handsomely compensated, who would opine (after reviewing the audio/video evidence) that Deputy Goode did not at least arguably have probable cause for arresting Plaintiff for interfering with his public duties. Deputy

- Plaintiff has proffered no expert testimony attempting to create a fact issue as to why qualified immunity is unavailable, and has therefore not met her burden to do so if she would seek to avoid summary judgment.[4]

1.2     The clear and undisputed evidence in this case dictates that Deputy Goode should be granted summary judgment. There is no genuine material fact issue as to whether he had probable cause to arrest, and there is no genuine material fact issue as to his entitlement to qualified immunity.

## II.
## DISCUSSION REGARDING QUALIFIED IMMUNITY

2.1     The job of the typical peace officer is difficult, dangerous, and often thankless. It requires extensive training to learn how to exercise independent law-enforcement judgment to deal with an infinite variety of unique and unpredictable circumstances which are often tense, uncertain, potentially dangerous, and rapidly evolving. The courts have recognized that police officers are often forced to make split second judgments that may have serious and/or fatal consequences, while simultaneously attempting to protect, to the fullest extent of the law, the constitutional and legal rights of all citizens. The courts recognize this reality and therefore provide qualified immunity to officers carrying out their discretionary law

---

Goode was simultaneously trying to arrange for the mental health evaluation of a suicidal minor, investigate her complaints of recent family assault and abuse, protect this minor from being transported away from the scene by the potential perpetrator of such assault and/or abuse, and avoid being shot by an unexplainably belligerent and uncooperative mother.

[4]     No expert testimony is offered that"No reasonable officer standing, in Deputy Goode's shoes at the time of the incident could have believed that his actions were lawful and constitutional." This would be her burden. Interestingly, Plaintiff's own husband (a former law enforcement officer) does not dare to sign an affidavit supporting his own wife's spurious suit which attacks the propriety of Defendant Goode's discretionary law enforcement actions under the circumstances documented in the audio and video.

enforcement duties except in the most egregious of circumstances. *Graham v. Connor*, 490

U.S. 386, 396-97 (1989).

2.2    In this case, the undisputed evidence establishes that at the time of the incident in question,

Deputy Goode was required, as part of his law enforcement duties, to report to an unfamiliar

residence at night, which was occupied by several persons previously unknown to him. He

was further required to check on the suicidal outcry made by a 14-year-old girl at that home,

which she had made to an adult family friend earlier that day, and which that concerned adult

felt important enough to report to <u>CPS</u> rather than any other law enforcement agency or

mental health provider.

2.3    It was this dispatch which was routed to Deputy Goode for immediate action. He had a duty

to respond to this scene, danger or no danger. Once on scene, he could not simply walk away

from what can now be characterized as an incredible and nearly unprecedented melodrama.

Deputy Goode, regardless of his personal feelings, had a duty to preserve the peace.

Commendably, and due in no small measure to his judicious efforts, this situation was

resolved reasonably, peaceably, and constitutionally. He should be afforded summary

judgment for his actions that night.


### III.
### NO FACT ISSUE HAS BEEN CREATED AS TO THE EXISTENCE OF PROBABLE CAUSE TO ARREST PLAINTIFF FOR HER <u>INTERFERENCE WITH DEPUTY GOODE'S PUBLIC DUTIES</u>

3.1    In her *Response in Opposition*, the Plaintiff has created no fact issue disputing any of the

following information within Deputy Goode's <u>knowledge and/or reasonable belief</u> at the time

4

he made the decision to arrest Plaintiff.  These matters bear directly on the issue of probable cause, which is to be determined based on the objective facts known or believed to be true.

3.2     Specifically, the Court can once again review the authenticated and admissible audio video evidence, and the affidavits (and *Declaration*) on file, to glean the following information, none of which has been (or can be) disputed by Plaintiff:

- On the night he arrived to the scene, there was a 14 year old girl (K.V.) living at this residence who reported herself to be depressed and miserable. Listen to Doc. 25-4, Exhibit "C" containing audio file G6L65079.MP3, at time mark reference 9:20-10:40, where K.V. advises the deputies that she is depressed and miserable.

- On the night he arrived to the scene, this 14 year old girl had made a suicidal outcry that evening to an adult friend, threatening to drown or hang herself. See Doc. 25-1, Affidavit of Goode at ¶ 10, and Doc. 25-3, Affidavit of Ellis, Exhibit "A" page 2, containing dispatch information on the Fort Bend County Sheriff's Office Report.

- Deputy Goode was aware that the "concerned adult" to whom this outcry was made apparently decided that the situation at this home was serious enough to report the outcry to CPS rather than any other law enforcement agency or mental health provider.  See Doc. 25-1, Affidavit of Goode at ¶ 12.

- Deputy Goode therefore had a duty to act on behalf of CPS and the Fort Bend County Sheriff to reasonably exercise his law enforcement discretion and try and simultaneously carry out his duties under the *Texas Health & Safety Code* Chapter 573; the *Texas Family Code* Chapters 71, 261 and 262; the *Texas Constitution* Art. 2.17. and Art. 2.20; as well as various applicable or potentially applicable provisions of the *Texas Penal Code* and the *Texas Code of Criminal Procedure*, all as set forth in more detail in Deputy Goode's *Motion for Summary Judgment*, (Doc. 25) which is incorporated herein by reference.

- On the night he arrived at the scene, K.V. had reported (seemingly quite credibly[5]) that her parents, and her mother in particular, was a "psychopath," had thrown

---

[5]     Plaintiff Voss now attempts to insinuate in her *Declaration* (Doc. 37-1 ¶ 28) that Deputy Goode should never have placed any credence in her **deceitful** (Doc. 37-1 ¶ 41), **rebellious** (Doc. 37-1 ¶ 24), **manipulative** (Doc. 37-1 ¶ 24), **defiant** (Doc. 37-1 ¶ 41) and **conspiratorial** daughter (Doc. 37-1 ¶ 24). Even if true, these citizens (and their respective character traits) were unknown to Deputy Goode at the time, and  he should hardly be criticized for the seemingly credible claims of abuse being made by K.V. at the time of the incident in question, especially given the audio and video evidence revealing the disturbing and strange conduct of the Plaintiff.

scissors at her, and *had abusively threatened to place her in a mental hospital if she (K.V.) called CPS on them (her adoptive parents)*. Listen to Doc. 25-4, Exhibit "C" containing audio file G6L65079.MP3, at time mark reference 2:20 to 4:12.

• On the night he arrived at the scene, K.V. had credibly reported that her parents treated her in an abusive way, and other adults (former family friend Sandy Edwards and husband) had told K.V. that they agreed with their assessment of her parents. Listen to Doc. 25-4, Exhibit "C" containing audio file G6L65079.MP3, at time mark references 2:20 to 2:46 and 11:26 to 14:25.

• On the night he arrived at the scene, K.V. had credibly reported that her mother sometimes acted like she was going to throw something at K.V. giving K.V. the apprehension of injury. Listen to Doc. 25-4, Exhibit "C" containing audio file G6L65079.MP3, at time mark reference 11:26 to 12:15.

• On the night he arrived at the scene, K.V. had reported (seemingly quite credibly) that her mother and father were former law enforcement personnel, and had access to guns in the house, including a gun under the bed. Indeed, Plaintiff Voss actually now admits in her *Declaration*, Doc. 37-1 ¶25 that such guns were present. Although simultaneously, she now protests that she "doesn't like firearms" as if Deputy Goode was supposed to know this (and bet his life on it that night), if such statement is actually true.[6]

• During the course of attempting to carry out his multiple duties that night, Deputy Goode had witnessed Plaintiff Voss physically commandeering K.V. by forcing K.V. to get into the Plaintiff's car in an effort to begin the physical process of driving K.V. away from within the zone of protection Deputy Goode had determined to afford K.V. See Doc. 25-1, Affidavit of Goode at ¶¶ 23-25. Interestingly, Plaintiff Voss now admits that she did physically interfere with his efforts in this regard, as set forth in her *Declaration* (Doc. 37-1 ¶¶12 and 24). This interference was more than "speech only."

• During the course of attempting to carry out his multiple duties that night, Deputy Goode had also witnessed Plaintiff Voss attempting to manipulate him and thwart the execution of his duties by threatening to abandon K.V. (and lock K.V. out of the house that night) if CPS was called to the scene, or if Deputy Goode put K.V. into his squad car.  See Doc. 25-1, Affidavit of Goode at ¶¶ 24 and 26. This constituted a physical attempt to illegally abandon K.V. and to foist K.V., unwanted, into Deputy Goode's permanent physical possession, interfering with and impeding a number of

---

[6]     Listen to Doc. 25-4, Exhibit "C" containing audio file G6L65079.MP3, at time mark reference 5:15 to 6:00 and 17:48 to 18:27.

Deputy Goode's present and future duties. This interference was also more than "speech only."

- Finally, during the course of attempting to carry out his multiple duties that night and just prior to her arrest, Plaintiff Voss refused to cooperate with his investigation by giving him her full name and date of birth so he could run a criminal background check on her. After having already been warned that she was interfering,[7] she turned her back on him and walk away from him in defiance of his effort to continue his investigation. At that moment, as she demonstrated her unwillingness to physically obey Deputy Goode's directives, she appeared suspiciously determined to return inside the residence where it was known (and she now admits in her *Declaration* Doc. 37-1 ¶25) she had access to firearms. These actions and words, in combination, constituted far more than "speech only."

3.3    These objective facts demonstrate, when evaluated in the aggregate, that Deputy Goode was fully justified to arrest Plaintiff Voss for *Interference with Public Duties* as he attempted to reasonably exercise his law enforcement discretion to try and simultaneously carry out his duties under the *Texas Health & Safety Code* Chapter 573; the *Texas Family Code* Chapters 71, 261 and 262; the *Texas Constitution* Art. 2.17. and Art. 2.20; as well as various

---

[7]    Proof that Deputy Goode had probable cause to believe Plaintiff Voss was interfering with at least "criminal negligence" can be found in this exchange, approximately six minutes before she was arrested. She was duly warned that her continuing efforts could be considered interfering with Deputy Goode's public duty. This short colloquy can be heard in Doc. 25-4, Exhibit "C" containing Audio file G6L65082.MP3 at time mark 0:01-0:57:

| | |
|---|---|
| G(calmly): | Here's the deal ma'am...you are ex-law enforcement, correct? Okay!… So this gives you a little bit of a heads up. We have our duty to make sure that she's okay. Saying that, we can't let you leave. Okay? It would be *interfering*. |
| V(aggressively): | *Interfering* with what!? |
| G(calmly): | My *public duty*. |
| V(aggressively): | Is she not okay? |
| G(calmly): | Ma'am… There is a mental health process and we have to go through that process. |
| V(screaming): | Well you know what?… You go get a warrant or take me to jail because I'M TAKING HER to the emergency room! |
| G(calmly): | Ma'am, I'm not going to get a warrant... she's not going to go anywhere. |
| V(screaming): | Well get a warrant! |
| G(calmly): | I don't need a warrant |
| V(screaming): | Well then take custody of her!... Take her with you, NOW! |
| G(calmly): | Ma'am, *I'm about to put you into custody* and I don't want to do that. |
| V(screaming): | Then take her with you!… Take her with you!… TAKE HER WITH YOU!! |

applicable or potentially applicable provisions of the *Texas Penal Code* and the *Texas Code of Criminal Procedure*, all as set forth in more detail in Deputy Goode's *Motion for Summary Judgment*, (Doc. 25) which is incorporated herein by reference. It is crystal clear that Plaintiff Voss was interfering with Deputy Goode, or that reasonable officers could so conclude. Plaintiff has created no fact issue sufficient to permit her to present this question to a jury. In fact, it can be determined, on the present record, that probable cause to arrest for a Class B Texas law misdemeanor existed as a matter of law.

3.4     In light of the above, Deputy Goode <u>had probable cause</u> to temporarily arrest/detain Plaintiff Voss, and handcuff her, in order to stop her continuing interference and to control the scene sufficiently to allow him to ensure the suicidal minor was properly evaluated, continue (unimpeded) with his investigation into the very real possibility that Plaintiff Voss was guilty of assault and/or family violence. He also had to protect the victim (K.V.) and other potential victims (mental health screeners) from the Plaintiff. He was therefore constitutionally permitted to arrest her, or as noted in the next section below, is <u>at least</u> entitled to qualified immunity.

## IV.
## NO FACT ISSUE HAS BEEN CREATED SUFFICIENT TO AVOID SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY

4.1     Plaintiff has brought forth no evidence or authority which establishes that <u>no objective officer</u> could have reasonably believed that arresting Plaintiff was unlawful under these

circumstances. Moreover, Plaintiff has not adduced <u>any evidence</u> to overcome Deputy Goode's presumptive entitlement to qualified immunity.[8]

4.2     Where a defendant raises the defense of qualified immunity, the burden is on the plaintiff to overcome that defense by demonstrating  with  specific  facts that his allegedly wrongful action violated clearly established federal law. *Burns-Toole v. Byrne*, 11  F.3d 1270 (5th Cir. 1994), *cert. denied*, 512 U.S. 1207 (1994).  Plaintiff Voss has never done so. Her *Response in Opposition* is completely inadequate to even join these issues for trial.

4.3     In order to avoid summary judgment, Plaintiff's *Response in Opposition* was required to demonstrate the existence of a fact issue probative on the question as to whether *no reasonable officer could have believed* that the actions taken by Deputy Goode were lawful.[9] She did not do so, and Deputy Goode is therefore entitled to judgment on the basis of his qualified immunity. See *Anderson v. Creighton*, 483 U.S. 635 (1987).

4.4     Again, Plaintiff did not produce any probative or admissible evidence which shows that <u>every investigator</u> would have <u>known</u> the decision to arrest Plaintiff was outside of the permissible range of Deputy Goode's legitimate discretion under clearly established law.

---

[8]     For Plaintiff to support a constitutional claim against Deputy Goode based on his decision to arrest Plaintiff, she must show that probable cause  <u>did not support the arrest</u>. See *Haggerty v. Texas Southern University*, 391 F.3d 653, 655 (5th Cir. 2004). "The probable cause issue must be analyzed under the 'totality of the circumstances' as to whether there is a 'fair probability' that a crime is occurring." *U.S. v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 2332 (1983)). The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed for every suspect released. *Baker v. McCollan*, 443 U.S. 137,145, 99 S. Ct. 2689 (1979).

[9]     Of course, as noted in Defendant Goode's *Motion for Summary Judgment*, 42 U.S.C. §1983 provides redress only for gross or reckless abuses of power.  *Schaefer v. Whitted*, 121 F. Supp. 3d 701, 713 (W.D. Tex. 2015). Simple negligence (even were there any here, which Deputy Goode does not concede) is not enough to impose liability under 42 U.S.C. §1983.

Compare *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 2093 (2012); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 385 (5th Cir. 2009); *Manis v. Lawson*, 585 F.3d 839, 846 (5th Cir. 2009); *Mendenhall v. Riser,* 213 F.3d 226, 231 (5th Cir. 2000); *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); and *Pfannsteil v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir.1990).

4.5   Therefore, Deputy Goode is protected by qualified immunity because the current record still fails to show evidence that no investigator could reasonably have believed arresting Plaintiff was impermissible under the circumstances of this case. The evidence in the record supports and establishes that there was at least a fair probability that Plaintiff (a witness and a suspect) was interfering with Deputy Goode's public duties during this incident, (with the requisite *mens rea*) as prohibited by Texas law.

4.6   "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013). Deputy Goode has already demonstrated that there are two other seasoned and experienced law enforcement officers who confirm that they think Deputy Goode acted reasonably. The Court would have to believe they were not credible, or reasonable, but Plaintiff did nothing to attack their clear, positive and direct testimony, even after taking their depositions.  She indeed has nothing to offer except for her own self-serving *Declaration* that she (as a person allegedly working in law enforcement for over 20 years) would have done things differently.(Doc. 37-1¶26).

4.7   Therefore, this record clearly establishes that at least two other reasonable public officials (McGuigan and Ellis) would not have concluded that Deputy Goode's actions were clearly

10

unlawful and unconstitutional, and he is therefore entitled to qualified immunity.  See, *Pfanstiel,* 918 F.2d at 1183.

4.8    Under the clear, positive, and direct evidence of the circumstances then facing Deputy Goode, this Court can determine, as a matter of law, that it was reasonable for Deputy Goode to arrest Plaintiff for the Class B Misdemeanor of "Interference with Public Duties which she had intentionally, or with criminal negligence, committed in his presence.

## V.
## <u>CONCLUSION</u>

5.1    There is only one potential fact issue of any moment at this stage of the case: Whether every other reasonable officer would have <u>known</u> that it would be clearly unconstitutional to arrest and/or detain Plaintiff Voss, at the time and place Deputy Goode did so, considering the circumstances facing Deputy Goode at the moment he made the decision to arrest.

5.2    This question can be answered as a matter of law, based upon the factual record in front of this Court.

5.3    The answer is clearly and unequivocally NO. At least <u>two</u> other reasonable Texas peace officers believe that Deputy Goode acted constitutionally in arresting Plaintiff Voss, considering all of the facts and circumstances facing Deputy Goode at that moment. They have not been challenged or contradicted. Therefore, Deputy Goode is entitled to summary judgment.

5.4    In sum, all of the contemporaneous physical evidence documenting the matters made the basis of this lawsuit (video and audio), along with the unchallenged affidavit testimony, collectively and conclusively demonstrates that Deputy Goode had probable cause to arrest

Plaintiff, and therefore acted lawfully and constitutionally, or at a minimum is entitled to qualified immunity. Unfortunately for Plaintiff, she has not produced, and cannot produce, any *probative and/or admissible evidence* to the contrary. She is not entitled to a jury trial, as no reasonable jury could find in her favor based upon the summary judgment record.

5.5     In closing, summary judgment is appropriate in this case because there is no <u>genuine</u> dispute as to any material fact. In light of the admissible and authenticated evidence, which is clear, positive, direct and uncontradicted, Deputy Goode is entitled to judgment as a matter of law.

**<u>PRAYER</u>**

WHEREFORE, PREMISES CONSIDERED, Defendant Deputy Gregory G. Goode respectfully prays that after consideration of his *Motion For Summary Judgment*, Plaintiff's *Response in Opposition*, and this *Reply*, that all of Plaintiff's claims against him be dismissed with prejudice, that all relief demanded in Plaintiff's *First Amended Original Petition* be denied, with costs assessed against Plaintiff, and for all other relief to which this Defendant may be justly entitled.

Respectfully submitted,

/Sal P. LoPiccolo, II
_____
SALVATORE P. LOPICCOLO, II
Assistant Fort Bend County Attorney
SBN: 12571000
Federal ID No. 9959
301 Jackson Street (Mail)
401 Jackson Street (Office)
Richmond, Texas 77469
(281) 341-4555
(281) 341-4557 Facsimile
Sal.LoPiccolo@fortbendcountytx.gov
ATTORNEY-IN-CHARGE FOR DEFENDANT
DEPUTY GREGORY G. GOODE

OF COUNSEL:

RANDALL W. MORSE
Assistant Fort Bend County Attorney
SBN: 14549700
Federal ID No. 6751
301 Jackson Street (Mail)
401 Jackson Street (Office)
Richmond, Texas 77469
(281) 341-4555
(281) 341-4557 Facsimile
Randy.Morse@fortbendcountytx.gov

## CERTIFICATE OF SERVICE

I hereby certify that the above instrument is being served on all known counsel of record, or parties appearing *pro se*, in one of the manners as is authorized by the Federal Rules of Civil Procedure on July 2, 2018.

s/Sal P. LoPiccolo, II/
SALVATORE P. LOPICCOLO, II