United States District Court
Southern District of Texas

**ENTERED**

February 04, 2019

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MONICA VOSS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-1408 |
| | § | |
| GREGORY G. GOODE, | § | |
| | § | |
| Defendant. | § | |

**<u>MEMORANDUM AND RECOMMENDATION</u>**

Pending before the court[1] is Defendant Gregory G. Goode's ("Goode") Motion for Summary Judgment on Qualified Immunity (Doc. 25). The court has considered the motion, Plaintiff's response, Defendant Goode's reply, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant Goode's motion be **GRANTED.**

### I. Case Background

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that Defendant Goode violated her constitutional rights when he arrested her for failing to identify herself during a welfare check on her daughter.

### A. <u>Factual Background</u>[2]

On June 20, 2016, Defendant Goode, a deputy with Fort Bend

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  <u>See</u> Doc. 10, Ord. Dated Aug. 25, 2017.

[2]     This account of the encounter at issue is derived from Plaintiff's declaration.  Defendant's evidence is cited for supplemental, non-contradictory facts.  In certain instances of disputed facts, Defendant's contradictory evidence is cited in footnotes.

County Sheriff's Office ("FBCSO"), "received a dispatch to report to the scene of a single-family residential home . . . [in] Fort Bend County, Texas, in reference to a suicidal subject."[3] Defendant Goode was informed that Texas Child Protective Services ("CPS") had requested a welfare check on Plaintiff's fourteen-year-old daughter K.V. who had reportedly made a suicidal outcry to an unrelated adult.[4]   Defendant Goode later indicated that he understood his duty at the time to be to investigate K.V.'s mental and physical health and, "if circumstances warranted, to investigate the potential parental abuse and/or neglect of that girl."[5]

At approximately midnight, Defendant Goode arrived at Plaintiff's residence closely followed by FBCSO Deputy Philip McGuigan ("McGuigan"), who was dispatched to serve as backup.[6] Defendant Goode knocked on Plaintiff's front door and announced he was with the FBCSO.[7]   Defendant Goode asked if Plaintiff was

---

[3]     Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. pp. 2-3.

[4]     Id. p. 3; see also Doc. 25-2, Ex. 2 to Def. Goode's Mot. for Summ. J., McGuigan's Aff. p. 2; Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 p. 2.

[5]     Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. p. 4.

[6]     See id. p. 3 (stating that, upon Defendant Goode's arrival, Deputy McGuigan "was arriving"); Doc. 25-2, Ex. 2 to Def. Goode's Mot. for Summ. J., McGuigan's Aff. p. 2 (describing himself as "backup for [Defendant] Goode").

[7]     Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. p. 2 (stating that she saw a uniformed person through the glass and that "[t]here were two Fort Bend County Sheriff's deputies there."); but see Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. p. 3 (stating that Deputy McGuigan arrived by the time Defendant Goode requested to speak with K.V.); Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot.

"Monica," and she responded that she was.[8]  He explained that "he was there at the request of Texas Child Protective Services to do a welfare check on K.V. who was allegedly threatening to commit suicide from her bedroom."[9]

Plaintiff summoned K.V. and Plaintiff's husband ("Mark") to the front foyer.[10]  When K.V. arrived, Defendant Goode inquired whether she was depressed and whether she intended to harm herself.[11]  According to Plaintiff, "K.V. plainly denied these actions [sic] to [Defendant] Goode."[12]  Plaintiff observed that "K.V. was laughing about it" and "appeared shocked" by the questions.[13]  Plaintiff answered all questions directed to her and "never threatened anybody at any time."[14]

When Defendant Goode spoke to Mark, who was also a peace officer, Defendant Goode explained the purpose of the call, and the

---

for Summ. J., Pl.'s Decl. p. 12 (stating that Deputy McGuigan did not arrive at the same time as Defendant Goode and was not present when Defendant Goode first spoke with Plaintiff, K.V., and Plaintiff's husband).

[8]    Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. p. 2.

[9]    Id. pp. 2, 12.  Defendant Goode stated that, upon mentioning CPS, Plaintiff's "attitude, demeanor and statements started to give [the deputies] substantial cause for concern that there might be a problem with 'family violence' in [the] household." Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. p. 3.

[10]    Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. pp. 8, 12.

[11]    See id. p. 2.

[12]    Id. p. 2; see also id. pp. 11, 12.

[13]    Id. p. 2.

[14]    Id.

two engaged in small talk about law enforcement.[15]   Mark then retired to his bed.[16]   Plaintiff suggested that Defendant Goode interview K.V. without Plaintiff present, and, after an initial refusal, he did so outside of the house.[17]

During the interview with the deputies, K.V. admitted that she had reported suicidal ideation to an adult friend.[18]   She also disclosed that: (1) she was in a mental-health crisis; (2) she was depressed and wanted to "end her misery;" (3) the adult friend opined to K.V. that her parents treated her abusively; (4) Plaintiff "had relatively recently thrown hard or sharp objects" at K.V., "including a telephone[] and a pair of scissors" and that Plaintiff "just acted like she was going to throw something at K.V., giving K.V. apprehension of injury;" (5) "K.V. was afraid of her mother . . . who had <u>access to guns</u> under the bed in the house;" and (6) "K.V.'s home environment had led her to thoughts of either drowning herself in the family's pool or hanging herself."[19]

---

[15]   <u>Id.</u>; <u>see also</u> <u>id.</u> pp. 8, 9, 12.

[16]   <u>See</u> <u>id.</u> pp. 3, 9.

[17]   <u>See</u> <u>id.</u> pp. 3, 11; <u>see also</u> Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 pp. 2-3; Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 Suppl. by Deputy McGuigan p. 1.

[18]   <u>See</u> Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. p. 5; Doc. 25-2, Ex. 2 to Def. Goode's Mot. for Summ. J., McGuigan's Aff. p. 2.

[19]   Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. p. 5; <u>see also</u> Doc. 25-2, Ex. 2 to Def. Goode's Mot. for Summ. J., McGuigan's Aff. p. 2; Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 p. 3; Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 Suppl. by Deputy McGuigan pp. 1-2.

Defendant Goode observed no physical injuries to K.V.[20]

Defendant Goode determined, based on his informed concern that "K.V.'s suicidal thoughts and depression might be indicative of a problem with family violence, abuse, or neglect," that further investigation was warranted.[21] Deputy McGuigan also testified that he identified "a number of red flags," particularly Plaintiff's "unusually aggressive and belligerent behavior" which raised the concern of family violence.[22]

"After 20 or 30 minutes[, Plaintiff] went outside to see what was taking so long."[23] Defendant Goode informed Plaintiff that he needed to contact Texana Crisis Center ("Texana") to request that a mental-health professional perform an assessment of K.V.'s safety.[24] Pending the arrival of that individual, Defendant Goode decided that he should place K.V. in the back seat of his patrol vehicle.[25] Plaintiff "protested vehemently, . . . attempted to interfere with [Defendant Goode's] desire to place K.V. in the squad car," and stated that, if he contacted CPS, he would have to

---

[20]   Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 p. 3.

[21]   Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. p. 5.

[22]   Doc. 25-2, Ex. 2 to Def. Goode's Mot. for Summ. J., McGuigan's Aff. p. 2.

[23]   Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. p. 3.

[24]   Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. pp. 6-7; see also Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 pp. 3-4.

[25]   See Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. p. 6.

take K.V. with him because Plaintiff would lock K.V. out of the house.[26]  Deputy McGuigan later described Plaintiff as raising her voice and becoming verbally argumentative.[27]

Plaintiff represented to Defendant Goode that she would provide K.V. with any necessary psychiatric care.[28]  Plaintiff "told K.V. to get into [Plaintiff's] car for the trip to the hospital" and then "put K.V. in the car."[29]  Defendant Goode said that he would not allow K.V. to go with Plaintiff.[30]  Plaintiff did not leave with K.V.[31]  Defendant Goode warned Plaintiff that "she was getting close to being arrested for interfering with [Defendant

---

[26]    See id. pp. 6, 7; Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 p. 3 (stating that Plaintiff made this threat "several times").

[27]    Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 Suppl. by Deputy McGuigan p. 2.

[28]    See Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. p. 3; Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 p. 3.

[29]    Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. pp. 3, 5; see also Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. p. 6 (stating that Plaintiff tried to order K.V. not to get into the patrol vehicle but, instead, to get into Plaintiff's car).

[30]    Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. p. 3; see also Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 p. 3.

[31]    Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. p. 5.  According to Defendant Goode's affidavit, he told Plaintiff that K.V. was in his protective custody and could not leave the scene with Plaintiff.  Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. p. 6.  He explained that the mental-health protocol required that K.V. remain in protective custody until she was evaluated.  See id.  Defendant Goode stated that it was at this point that Plaintiff asked him to contact his supervisor, Sergeant Jerome Ellis ("Ellis"), whom he called.  See id. p. 7; Doc. 25-3, Ex. 3 to Def. Goode's Mot. for Summ. J., Sergeant Ellis's Aff. pp. 1-2.

Goode's] investigation."[32]   Defendant Goode placed K.V. in his patrol vehicle, and Plaintiff went into the house "for a few minutes to sort the confusing situation out."[33]

When Plaintiff returned outside, she requested Defendant Goode's information and informed him that she was leaving, to which he responded that she was free to leave.[34]   Plaintiff then began walking back toward the entrance to her house when Defendant Goode "began to yell at [her], 'Ma'am, Ma'am, I need your ID.'"[35] Plaintiff responded that she did not have it with her and refused to go inside the house to get it when Defendant Goode asked that she do so.[36]   Defendant Goode responded in the negative to Plaintiff's query whether she was free to go, and Plaintiff

---

[32]     Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. p. 7.   The audio and video recordings reflect that Defendant Goode attempted several times to explain that he was required to follow certain protocol in these types of cases and that Plaintiff's actions and threats were interfering with his public duty.   See, generally, Doc. 25-4, Exs. 4A, 4B, & 4C to Def. Goode's Mot. for Summ. J., Audio & Video Recordings.

[33]     Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. p. 3; see also Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. p. 7.

[34]     See Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. pp. 3, 6.

[35]     Id. p. 3; see also Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 p. 3; Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 Suppl. by Deputy McGuigan p. 2.
Defendant Goode described the exchange in this way:
When [Plaintiff] began to try to re-enter her house, [Defendant Goode] requested that she identify herself.  Unfortunately, she refused and appeared to tr[y] to disobey [him], and continue to walk rapidly toward her front door.  [Defendant Goode] again requested that she identify herself.  She again refused. [He] told her she was not free to go, and in response she told [him] to 'put handcuffs on her.'
Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. pp. 7-8.

[36]     Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. pp. 3, 9; Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 Suppl. by Deputy McGuigan p. 2.

responded that he should "just arrest her."[37]

Defendant Goode then arrested Plaintiff "for failure to identify to a police officer," a reason which he repeated several times during the encounter.[38]  He led Plaintiff to the front of his patrol vehicle where he placed her in handcuffs.[39]  Defendant Goode informed Plaintiff that K.V. was "in custody" and that Plaintiff was not allowed to speak to K.V.[40]  When he began questioning Plaintiff, she asked to speak with an attorney.[41]  Plaintiff complained of arm pain from the behind-the-back handcuffing.[42]  The officers moved the cuffs to the front.[43]

Defendant Goode then directed Deputy McGuigan to place Plaintiff in his patrol vehicle.[44]  En route, Plaintiff exclaimed

---

[37]     Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 p. 3; see also Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. pp. 7-8 (internal quotation marks excluded)(stating that Plaintiff said, "to put handcuffs on her").

[38]     Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. p. 4; see also id. p. 3; Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 p. 3.

[39]     Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. p. 9; Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. p. 4.

[40]     Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. p. 3.

[41]     See id. pp. 3-4.

[42]     Id. p. 4.

[43]     See id.; Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 p. 3 (stating that Defendant Goode utilized two pairs of handcuffs due to recent surgery on Plaintiff's left wrist).

[44]     See Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. p. 9; Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 p. 3; Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. p. 4.

in the direction of Defendant Goode's patrol vehicle, "Thanks, [K.V.]!"[45] After a few minutes inside the patrol vehicle, Plaintiff "began to get sick . . . [and] knocked on the squad car window with [her] head . . . . A deputy opened the squad car door and let [Plaintiff] sit on the ground."[46] According to Defendant Goode, Plaintiff "calmed down" after a short time in the back of the patrol vehicle.[47] After a total period of approximately five to ten minutes during which Plaintiff remained in handcuffs, Defendant Goode removed the handcuffs.[48] He informed her that she was still being detained and was not free to leave.[49]

Plaintiff contacted a friend by cell phone, and the person suggested Plaintiff call Defendant Goode's captain.[50] Defendant Goode was "standing right over" Plaintiff and refused to call the captain.[51] "[Defendant] Goode asked [Plaintiff] if [she] wanted him

---

[45]     Doc. 25-4, Exs. 4A, 4B, & 4C to Def. Goode's Mot. for Summ. J., Audio & Video Recordings; see also Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. p. 9.

[46]     Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. p. 4; see also Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 p. 3 (stating that it was at this time that he moved the handcuffs to the front of Plaintiff's body).

[47]     Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. p. 10; see also Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 p. 3.

[48]     See Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 p. 3.

[49]     Id.

[50]     Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. Def. p. 4.

[51]     Id.

to jerk that phone out of [her] hand."[52]  Plaintiff asked that he

call a supervisor, which he did.[53]

Sergeant Jerome Ellis ("Ellis") arrived a few minutes later

and spoke with Defendant Goode for approximately twenty minutes.[54]

Sergeant Ellis told Plaintiff that "it appear[ed] everything was

just a big misunderstanding that had gotten out of hand."[55]

Sergeant Ellis apologized and explained that the officers were

contacting a mental-health professional to evaluate K.V. to

determine whether she was okay.[56]

After the Texana counselor arrived and interviewed K.V., she

was released.[57]  Plaintiff was never told that she was no longer

---

[52]     Id.

[53]     See Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report
No. 16-21088 p. 3; Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot.
for Summ. J., Pl.'s Decl. p. 4.

[54]     See Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for
Summ. J., Pl.'s Decl. p. 4; Doc. 25-3, Ex. 3 to Def. Goode's Mot. for Summ. J.,
Sergeant Ellis's Aff. p. 2.

[55]     Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for
Summ. J., Pl.'s Decl. pp. 4, 9.  Plaintiff stated that the handcuffs were removed
at this point, but that is inconsistent with the audio and video recordings.
Compare Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ.
J., Pl.'s Decl. p. 4 with Doc. 25-4, Exs. 4A, 4B, & 4C to Def. Goode's Mot. for
Summ. J., Audio & Video Recordings.

[56]     Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for
Summ. J., Pl.'s Decl. pp. 4-5, 9.

[57]     Id. p. 5; Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO
Report No. 16-21088 p. 4.  According to Defendant Goode, mother and daughter
signed an agreement in his presence not to harm one another.  See Doc. 25-1, Ex.
1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. p. 10; Doc. 25-3, Ex. 3A
to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 p. 4.  Plaintiff
denied that she or K.V. signed such a contract.  See Doc. 37-1, Ex. 1 to Pl.'s
Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. p. 14.

under arrest.[58]  Defendant Goode did not press charges.[59]  On March 25, 2017, an FBCSO deputy received an update on the case from Plaintiff by phone; Plaintiff requested the case be closed.[60]

**B.  <u>Procedural Background</u>**

Plaintiff filed this action on May 6, 2017, alleging violations of the Fourth Amendment right to be free from unreasonable searches and the Fourteenth Amendment right to be free from the deprivation of liberty without due process of law.[61]  As against Fort Bend County ("Fort Bend"), Plaintiff alleged that it maintained a policy, practice, or custom that was the moving force behind Defendant Goode's unconstitutional actions.[62]  On July 26, 2017, Defendants Goode and Fort Bend separately filed motions to dismiss.[63]  In response, Plaintiff filed an amended complaint.[64]  The only change in the allegations was the addition of a state-law claim for false imprisonment against Defendant Goode.[65]  Within two weeks, Defendants Goode and Fort Bend separately filed amended

---

[58]    Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. p. 9.

[59]    <u>See</u> Doc. 25-1, Ex. 1 to Def. Goode's Mot. for Summ. J., Def. Goode's Aff. p. 10; Doc. 25-3, Ex. 3 to Def. Goode's Mot. for Summ. J., Sergeant Ellis's Aff. p. 3.

[60]    <u>See</u> Doc. 25-3, Ex. 3A to Def. Goode's Mot. for Summ. J., FBCSO Report No. 16-21088 Case Suppl.

[61]    <u>See</u> Doc. 1, Pl.'s Orig. Compl. p. 7.

[62]    <u>See</u> <u>id.</u> p. 8.

[63]    <u>See</u> Doc. 4, Fort Bend's Mot. to Dismiss; Doc. 5, Def. Goode's Mot. to Dismiss.

[64]    <u>See</u> Doc. 7, Pl.'s 1st Am. Compl.

[65]    <u>See</u> <u>id.</u> p. 8.

motions to dismiss.[66]

On January 31, 2018, the court entered a Memorandum and Recommendation on the amended motions to dismiss.[67]   Regarding Plaintiff's claims against Defendant Goode, the court found that Plaintiff had abandoned, by not responding to Defendant Goode's arguments, the constitutional due-process claim and the state false-imprisonment claim.[68]   However, the court determined that Plaintiff's account of her encounter with Defendant Goode was factually sufficient to state a claim for false arrest against Defendant Goode.[69]   The court recommended that Fort Bend be dismissed because Plaintiff failed to adequately plead a county policy or custom that was the moving force behind the allegedly unconstitutional arrest.[70]

The parties filed no objections to the Memorandum and Recommendation, and the district judge adopted it in full.[71]   Upon adoption, the only remaining claim was the Fourth Amendment claim of false arrest alleged against Defendant Goode.[72]   On March 6, 2018, Defendant Goode filed an answer and, on April 17, 2018, the

---

[66]     See Doc. 11, Fort Bend's Am. Mot. to Dismiss; Doc. 12, Def. Goode's Am. Mot. to Dismiss.

[67]     See Doc. 16, Mem. & Recom. Dated Jan. 31, 2018.

[68]     See id. p. 10.

[69]     Id. pp. 13-14 (noting, though, that Defendant Goode's factual account differed vastly from that of Plaintiff).

[70]     Id. pp. 7-10.

[71]     See Doc. 17, Ord. Dated Feb. 20, 2018.

[72]     See Doc. 16, Mem. & Recom. Dated Jan. 31, 2018 p. 14.

pending motion for summary judgment.[73]  Plaintiff filed a motion for a continuance to conduct discovery and an agreed motion to extend time to respond to Defendant Goode's motion, both of which were granted.[74]  After another brief extension, Plaintiff timely filed her response.[75]  Defendant replied in early July.[76]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at

---

[73]     See Doc. 20, Def. Goode's Ans.; Doc. 25, Def. Goode's Mot. for Summ. J.

[74]     See Doc. 28, Pl.'s Mot. for Continuance to Conduct Disc.; Doc. 29, Agreed Mot. to Extend Time to Respond to Summ. J. Mot.; Doc. 30, Ord. Dated May 9, 2018; Doc. 31, Ord. Dated May 9, 2018.

[75]     See Doc. 35, Unopp. Mot. to Extend Time to Respond to Summ. J. Mot. by Five Days; Doc. 36, Ord. Dated June 25, 2018; Doc. 37, Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J.

[76]     See Doc. 38, Def. Goode's Reply to Pl.'s Resp. in Opp. to Mot. for Summ. J.

13

248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the movant carries its burden, the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute. Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)).  The court must accept all of the nonmovant's uncontroverted evidence as true and draw all justifiable inferences in her favor.  Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A., 759 F.3d 498, 505 (5th Cir. 2014)(quoting Anderson, 477 U.S. at 255).

### III.  Analysis

Defendant Goode moves for summary judgment on the only remaining claim in this action: false arrest in violation of the Fourth Amendment against Defendant Goode.  Although Defendant Goode concedes that he was mistaken that he had probable cause to arrest Plaintiff for the criminal offense Failure to Identify,[77] he argues that probable cause did exist for an arrest based on the charge of Interference with Public Duties.  He argues that Plaintiff cannot therefore raise a fact issue on the constitutionality of her arrest

---

[77]     See Tex. Penal Code § 38.02.

and that, regardless, he is entitled to qualified immunity. Plaintiff contends that the evidence reveals no probable cause that Plaintiff committed any criminal offense and that her detention was not permissible because it continued for more than an hour.[78]

## A.  __Applicable Legal Standards__

In order to prevail on a claim under Section 1983, a plaintiff must establish that the defendant deprived the plaintiff of her constitutional rights while acting under the color of state law. Moody v. Farrell, 868 F.3d 348, 351 (5th Cir. 2017).  Government officials have qualified immunity from Section 1983 "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

Qualified immunity strikes a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id.  If a trial is erroneously allowed, qualified immunity is "effectively lost" as "the driving force behind creation of the qualified

---

[78]      Plaintiff devotes more than one page of her nine pages of substantive response to the length of her detention.  The case cited and the argument proffered address when a detention becomes an arrest.  See Doc. 37, Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J. pp. 7-8.  Plaintiff also argues that Defendant Goode did not have reasonable suspicion to support detaining her. These arguments are irrelevant as the parties agree that Plaintiff was arrested and that the decision to arrest must be supported by the higher standard of probable cause.

immunity doctrine was a desire to ensure that insubstantial claims against government officials would be resolved prior to discovery. Id. at 231-32 (internal quotation marks and alterations omitted)(quoting Anderson v. Creighton, 483 U.S. 635, 630 n.2 (1987), & Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

Qualified immunity protects an officer even for reasonable mistakes in judgment. See id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004))("The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"); Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011)("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").

By invoking qualified immunity, a summary judgment movant shifts the burden to the nonmovant to rebut the movant's assertion. Cantrell v. City of Murphy, 666 F.3d 911, 918 (5th Cir. 2012).  In order to overcome an assertion of qualified immunity, a plaintiff must produce evidence that the alleged conduct violated a statutory or constitutional right and that the right was clearly established at the time of the challenged conduct.  See Morgan v. Swanson, 659 F.3d 359, 371 (5th Cir. 2011).  The Supreme Court held that the order in which these two considerations are addressed is at the court's discretion.  See Pearson, 555 U.S. 236-42.

Plaintiff's false-arrest claim falls within the unreasonable-

seizure provision of the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  Reasonableness is the ultimate measure of the constitutionality of a seizure of person or property. See Trent v. Wade, 776 F.3d 368, 377 (5th Cir. 2015)(internal quotation marks omitted)(quoting Fernandez v. California, 571 U.S. 292, 298 (2014)).

A warrantless arrest must be supported by "probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004).  The standard for the existence of probable cause is an objective one requiring that the officer draw a reasonable conclusion from the facts available to him at the time of the arrest.  Id.  The critical question when deciding whether qualified immunity protects an officer from false arrest claim, is whether "a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the officer possessed." Babb v. Dorman, 33 F.3d 472, 477 (1994) (internal alterations and quotation marks omitted) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

As long as probable cause supports the arrest, the officer's subjective intent or state of mind is irrelevant. Devenpeck, 543 U.S. at 153. Thus, a person is lawfully arrested without a warrant if the facts known to the officer give rise to probable cause to arrest for a crime, even if the offense giving rise to probable

cause is not the same as or even closely related to the offense articulated by the officer on the scene.  See id. at 153-54, 155; see also United States v. Bain, 135 F. App'x 695, 696 (5th Cir. 2005)(unpublished)(citing Devenpeck, 543 U.S. at 153-55)("An arrest does not violate the Fourth Amendment if the officer making the arrest has probable cause to arrest the defendant for any crime, regardless of whether the defendant can be lawfully arrested for the crime for which the officer states or believes he is making the arrest.").

These constitutional standards were clearly established at the time of Plaintiff's arrest, which leaves the court only to consider whether Plaintiff produced sufficient evidence to raise a fact question whether Defendant Goode's conduct violated Plaintiff's constitutional right to be free from unreasonable arrests.  If not, he is entitled to qualified immunity.

**B.   Discussion**

At the time of the incident, Defendant Goode told Plaintiff that she was being arrested for the crime Failure to Identify.  As of this round of dispositive motions, Defendant Goode has admitted that he did not have probable cause to arrest Plaintiff for that criminal offense.  That admission is of little import to the court's analysis as long as the circumstances known to Defendant Goode at the time gave rise to probable cause to arrest Plaintiff for any criminal offense.  See Devenpeck, 543 U.S. at 154-55.  If so, Defendant Goode's mistake of law, as well as his subjective

intent and explanation at the scene, are irrelevant.  See id.; Pearson, 555 U.S. at 231.  Plaintiff's burden to overcome Defendant Goode's motion for summary judgment on qualified immunity is a steep one.  She must point to an absence of probable cause; in other words, she must raise a fact issue as to whether the evidence supports the reasonableness of Defendant Goode's conclusion that probable cause supported her arrest.

In support of probable cause, Defendant Goode now points to the offense Interference with Public Duties:

> (a)  A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with:
>
>> (1)  a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law; . . . .
>
> (d)  It is a defense to prosecution under this section that the interruption, disruption, impediment, or interference alleged consisted of speech only.

Tex. Penal Code § 38.15.  At the time of his encounter with Plaintiff, Defendant Goode's duty was to investigate K.V.'s safety in response to CPS's request to perform a welfare check.  Cf. Tex. Fam. Code § 261.301 (allowing local law enforcement agencies to provide assistance to CPS in investigating reports of suspected abuse or neglect and stating that the primary purpose of the investigation into the child's welfare is the protection of the child).  Consistent with the Texas Family Code, Defendant Goode understood his duty to be to investigate K.V.'s mental and physical health and any parental abuse and/or neglect as warranted.

19

Plaintiff raises three arguments in response to Defendant Goode's assertion of qualified immunity: (1) Plaintiff did not interrupt, disrupt, impede or otherwise interfere with the deputies' exercise of their duties; (2) "the statute explicitly allows speech *even if* it interrupts, disrupts, impedes or interferes;"[79] and (3) Plaintiff did not act with the required scienter of criminal negligence.

In support of her first argument, Plaintiff generally cites her declaration and the video evidence of the encounter. She specifically cites her declaration as evidence that Plaintiff was cooperative at all times, that she was calm, posed no threat, and was not argumentative, and that she did not interfere with Defendant Goode's attempt to place K.V. in the patrol vehicle, as well as various other facts not relevant to whether Plaintiff interfered with the deputies' duties. However, the audio and video recordings belie Plaintiff's opinions about her conduct. See Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011)(citing Scott v. Harris, 550 U.S. 372 (2007))("Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene.")

In total, the summary judgment evidence establishes that Plaintiff: (1) argued in a raised voice about several issues; (2) protested the involvement of CPS and Texana; (3) repeatedly asked

---

[79]     Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J. p. 6.

the same questions of Defendant Goode; (4) attempted to take K.V. away from the scene; (5) delayed the placement of K.V. in the patrol car; (6) refused to provide identifying information; (7) failed to comply with Defendant Goode's requests and instructions; (8) threatened to lock K.V. out of the house; and (9) told the deputies that they would have to take K.V. with them.  The criminal statute does not require that the individual's actions themselves be illegal, purposeful, or even rude, only that they interrupt, disrupt, or impede.

In support of her second and third arguments, Plaintiff offers no discussion.  Plaintiff's contention that the statute does not criminalize speech-only conduct fails for two reasons.  First, the statute offers a defense to *prosecution* for speech-only conduct; it does not require physical conduct as an element of the offense for arrest.  Second, Plaintiff's conduct was not limited to speech. Although there is no evidence that she physically contacted or physically threatened Defendant Goode, she did physically interfere with his efforts to place K.V. in the patrol vehicle.[80]

Regarding scienter, criminal negligence is defined as the awareness of and disregard for "a substantial and unjustifiable risk" that the conduct will result in prohibited circumstances. See Tex. Penal Code § 6.03(d).  "The risk must be of such a nature and degree that the failure to perceive it constitutes a gross

---

[80]    By her own testimony, Plaintiff "put K.V. in the car."  Doc. 37-1, Ex. 1 to Pl.'s Resp. in Opp. to Def. Goode's Mot. for Summ. J., Pl.'s Decl. p. 5.

deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." Tex. Penal Code § 6.03(d). Without a doubt, Plaintiff's conduct, particularly, arguing with Defendant Goode about what steps should be taken, attempting to remove K.V., and threatening to lock K.V. out of the house posed a substantial and unjustifiable risk of interference with deputies' duties to investigate K.V.'s welfare.

Based on the summary judgment evidence, the court finds that of the information known Defendant Goode gave rise to probable cause to arrest Plaintiff for a crime, albeit the crime of Interference with Public Duties rather than the crime of Failure to Identify. As Defendant Goode had probable cause to arrest Plaintiff, her claim for false arrest fails.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant Goode's motion be **GRANTED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the

United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 4th day of February, 2019.

_____
U.S. MAGISTRATE JUDGE